Good morning, Your Honors. May it please the Court, my name is Dina Young and I represent appellant Michael Martin in this matter. We're here because Mr. Martin was convicted of a number of robberies in a trial which was highly unfair. There were a number of witnesses who testified about the actual robberies, but it's important to note that not one of the robbery victims identified Mr. Martin as participating in those robberies or described anyone that matched his description. What that left us with was the testimony of a cooperating witness. This cooperating witness was in custody in state prison. He ran the robbery operation from a cell phone or a series of cell phones from his prison. Was there just one cooperating witness or two? There were two. There were a father and son team. Is that the only evidence against your client? It's not the only evidence against the client, for sure. In fact, there was a pretty substantial amount of evidence against your client, wasn't there? I mean, he rented most of the cars. His cell phone put him in the area of most of the robberies. The cooperators participated in phone calls that were recorded, and those discussions, including people that weren't cooperating, incriminated your client. So to tell us that it's all about one cooperating witness kind of shortchanges the evidence that was offered up against your client. If I can put some of that in context, Your Honor, what we started with from the primary cooperating witness was a script. Mr. Nelson decided early on that he was going to cooperate, and in preparation for his cooperation and for his interview with the agents, he wrote a list of robberies that he somehow knew about. Not all of these robberies were robberies he participated in. Many of them had nothing to do with Mr. Martin. And yet this list, which was composed, we don't know how it was composed. A lot of it, he testified to some extent that in some cases people told him what happened, but we know that this list is not based on any kind of personal knowledge. But everything on the list was testified to. No, not everything. He testified that he made the list. He testified about making the list, yes, but he did not testify as to every item on the list. And yet the list was admitted as an exhibit so that the jury could speculate freely about the items that he didn't testify to. Also, though, a lot of what he did testify to, again, was not based on his personal knowledge. So there's no basis for admitting even some of the testimony that was based on this document. What was most unfair to Mr. Martin, though, was the use that was made of this at trial. The witness didn't testify at trial from his own recollection. The witness was handed the list and said, oh, what's the next thing that you wrote on your list? What's the next thing that you wrote on your list? It takes away layers of Mr. Martin's ability to cross-examine and confront that witness regarding his memory, regarding, again, his question. Roberts, I mean, how does that inhibit cross-examination? It does. This is being used as a device to lead the witness through testimony on a bunch of events, but the list itself doesn't really say anything, and there's nothing that I can see that limits cross-examination as to whatever it is the witness winds up saying about those events. The list is actually quite detailed about what it matches the testimony. I mean, that's the problem. It's the same as if the government wrote a script and said, here, this is what your testimony is going to be about. Since we don't necessarily need you to remember it, we're just going to give you that script so you can read from it while you do your testimony. If you just look at the first item, it's a very detailed description about what event happened. He didn't have to remember that. He has it in front of him. Roberts, I'm looking at the list. So the jury has this. What is this? What is the juror supposed to infer from this list? The juror has heard testimony about some of these events. Well, that's it. It's the testimony that the jury might understand, but this list isn't going to tell the jury anything that it didn't hear in the testimony. This list is, looks like jumble by itself. By itself. But if you, in context of the testimony, some of the terminology is explained. But also, this list refers to an entire set of robberies committed by another person and his team in, that has nothing to do with the Martin case, and yet the jury can be left to speculate whether it does or not. It just leaves too much, too much room for speculation on the part of the jury. And too much of it is just inadmissible. Now, if you look at, and again, we've read your briefs, both the opening brief and the response, the reply brief. Let me just recite the evidence again. And Judge Clifford has already alluded to this. And that is Martin rented the SUVs used in at least four of the robberies. His cellular telephone was in the vicinity of each robbery as it was occurring. He made incriminating statements on recorded telephone calls. And his explanations for his conduct were subject to disbelief. Therefore, the government says, as you know, even if the district court had erred, any error did not affect Martin's substantial rights or the fairness and integrity of the proceedings. I disagree. Your answer. Again, we've read what you've written. But I'm wondering if you could articulate why that reasoning is wrong. The recordings that the court is referring to were not made in the course and scope of the conspiracy. The recordings that the court is referring to were made from the state prison at the They weren't part of the conspiracy. They weren't. They were designed specifically to set up an incriminating response. We don't know if he'd have gotten an incriminating response other than the way these phone calls were laid out. Mr. Martin tried to explain his relationship with Mr. Andrews, which was his way of trying to explain why he rented cars from Mr. Andrews, because that's just something they did. It's just something he'd done for years. They'd grown up together. They knew each other. So Mr. Martin, whether you believed him or not, whether the jury believed him or not, tried to explain some of these things. But it was this use of the informants to bring in statements that were not part of the conspiracy, and this includes statements by Mr. Andrews, which directly incriminated Martin, which were included in the briefs. But it's also wrapped into the use of Mr. Martin's testimony in the briefs, which he used improperly to vouch for the testimony of other witnesses, and him being asked to agree with testimony of other witnesses. He wasn't asked if they were lying or telling the truth or not telling the truth. He was asked if he agreed with testimony that he otherwise had no personal knowledge of. So what's the difference between that and asking is the witness telling the truth or not? He has no basis for answering it, first of all, but it's equally improper question. The case law that I've cited in the brief that supports that kind of questioning — I think that's Greer — allows questioning such as, you know, you've heard testimony X, Y, Z, yes or no, and then you can go on to ask the defendant, then, his own version of the facts. That's not what was done in this case. He was asked whether or not a robbery took place based on testimony he just heard. There's authority that says it's over the line to ask somebody, are these witnesses lying? Is there any authority that supports saying that the examination here is the same thing or is also over the line? I think the focus of the cases that I'm familiar with are on the notion of making the witness agree that somebody else is a liar. I think that the Court's correct in that. I also think that there's a lot of gray area within those cases. I don't think we have a bright line test that we can apply. What's the best case that you would cite to us for saying the formulation here of the question was improper? There is a case that was written, and I don't necessarily agree with it, about it has to actually be a lie, isn't there? I apologize. I'm not hearing that. There is a case that's actually on point. I can't remember what the name of it is, but it said it has to — you have to actually be asking if they were lying, not using a different phrase. Do you remember that case? I don't, and I'm sorry. That's okay. Alcantara, Castillo, and Combs. I'm sorry. I'm drawing a blank. I accept your point, but there's other ways of getting at that point than using the word lie, but I think we do have a case on that. Were Mr. Martin's fingerprints found on the plastic license plates covering the real license plates on the rental cars? Yes, Your Honor. They were. And I would concede his explanation for that was not the best. And the evidence also was that he rented the cars used in the robberies. But there's also evidence that he didn't necessarily know they were being used in the robberies. He said he rented cars frequently, but he also, when one of the cars was impounded, made a phone call to the police to see if he could get the car back. He testified, right, at trial. He did. And we look at the evidence in the light most favorable to the government. Understood, but the court also has to consider whether the evidence that came in came in correctly and came in within the rules of evidence and whether or not Mr. Martin received effective assistance of counsel with regard to evidentiary objections which should have been made and weren't made. And with that, I would like to reserve my remaining time for rebuttal. All right. Thank you, counsel. Thank you. It's still morning, so good morning. May it please the Court, Kirsten Alt for the United States. The district court did not err, let alone plainly err, in its evidentiary rulings at trial, nor in its sentencing guidelines calculations. Therefore, Martin's convictions and sentence should be affirmed. First, the district court did not plainly err by admitting plea agreements of two cooperating witnesses after Martin challenged both their credibility and bias during opening statement and cross-examination, and where the district court gave a clearly appropriate limiting instruction. Second, the district court was not required to sua sponte strike the prosecutor's questions on cross-examination that did not require Martin to call other witnesses at trial liars, but only asked if Martin agreed that certain testimony had been given or that certain facts had been established. Third, the district court was not required to sua sponte strike a handwritten list of robberies that was admissible as a past recollection recorded and to which Martin actually used during his cross-examination of Mr. Nelson at trial. And fourth, the district court did not plainly err by admitting portions of recorded telephone calls between a cooperating witness and a co-conspirator where Martin's own statements demonstrated that the conspiracy was ongoing and the statements were made in furtherance of it. Finally, the district court made clear and explicit findings that Martin's testimony at trial consisted of material false statements that he made willfully. Going to the robbery list, I would simply like to correct or make clear that the list of robberies was based on Mr. Nelson's personal knowledge. As he testified at trial, he was the person who contacted the victims. He was the, as his son testified, was very persuasive. He was the one who spoke to them over the phone from his contraband phone in prison and convinced them, most of them, to fly to the Bay Area with their expensive jewelry and watches and to sell them so that the robbers would have the opportunity. In addition, as he testified, in most cases, one of the robberies, robbers, usually Mr. Andrews, would call him, and he would be on the phone as the robbery was occurring, and so he could personally hear what was going on. And then the co-conspirators would inform him of the exact details of the robberies afterwards. So he did have personal knowledge of this list. Moreover, as the Court can see the list, which is at Excerpt of Record 7, it is a jotting of handwritten notes that are barely legible to anyone other than Mr. Nelson. And Mr. Nelson did testify to what was on the list at trial. And the list was, came in as an exhibit? It did come in as an exhibit without any objection. It was on the joint exhibit list submitted by both Mr. Martin's counsel and the government. And you agree that that should not have gone to the jury? No, Your Honor. As this Court has pointed out in the past, it is not the province of the trial court to interfere with defense counsel's trial strategy when defense counsel chooses not to object. Suppose there had been an objection. If there had been an objection, then we would have a much better foundation laid in the record that this was a past recollection recorded and was properly admitted to the jury. But because defense counsel didn't object, the government was not obligated to lay that foundation. It did go through most of the steps, establishing that this was based on Mr. Martin's Mr. Nelson's personal knowledge, establishing that he had made it at or near the time of the events. He made it shortly after he was arrested, and establishing that his memory was better then than it was at trial. So do I hear you to be saying, and maybe I'm misinterpreting what you're saying, that basically it's the government does not have an obligation to do it right? And that it's — if we come back to an appellate court in a gotcha situation, then, you know, it's defense counsel's problem. Doesn't the government have an obligation to introduce evidence correctly? Yes, Your Honor. And the government did do it, as I just stated, in an abbreviated fashion. The government established the elements for a past recollection recorded. But I'm simply stating that the government would have done it more clearly had — had defense counsel objected at trial. And, yes, the government does have an obligation to do it correctly. However, as one of the litigants in an earlier argument suggested, if, for example, defense counsel stipulates that something is a business record, the government does not then have an obligation to go through on the record and establish that it is a business record. And here — Although, I guess, the argument could be made that, from the government's perspective, to ward off ineffective assistance of counsel arguments, maybe it is in the government's — within the government's obligations to anticipate those kinds of issues and — Yes, Your Honor. However, here, the procedure was that the — the district court required the parties to submit a joint exhibit list, which they did. And Martin's counsel objected to some things that were — that the government wanted to introduce at trial. He did not object to this — this list of robberies, this Exhibit 50. He objected, for example, to a manifesto that Mr. Martin had written. And the district court excluded that. He did not object to this. And so because he did not file a motion to eliminate, because he did not object to including it on the parties' joint exhibit list, the government had no reason to believe that he had any objection to introducing it. And so that's why I'm clear. So it's on the exhibit list. Is it introduced into evidence? Excuse me? Is it introduced into evidence? Yes, Your Honor. Because sometimes things can be on an exhibit list without being introduced into evidence. Yes, Your Honor. However, he did not file a motion to eliminate, and he did not object at trial. And the government did lay a foundation to establish that it was a past recollection recorded and used it — primarily, both sides used it to refresh Mr. Nelson's memory. In addition, there's no prejudice, or actually because it's plain error, it does not affect Mr. Martin's substantial rights, because it actually fit. The reason why his trial counsel wanted to use it is because his name does not actually appear next to all of the robberies that Mr. Nelson testified that he participated in. As his counsel pointed out at trial, in an effort to impeach Mr. Nelson and claim that Mr. Nelson had put Mr. Martin into robberies where he wasn't actually a participant because his name wasn't listed on the list, and to try to call into question Mr. Nelson's testimony. So there's a legitimate strategic reason why counsel would want this in evidence, and he used it to support his defense. Roberts, could I ask a question, if it's okay with my panel? Go for it. On the question of the phraseology, asking Mr. Martin whether he agreed to the phraseology to the characterizations as, you know, presented by the prosecutor, I think it's pretty well established that the government cannot make a defendant a witness at the jury in terms of his or her demeanor in the courtroom. This is not a question of impeaching regarding the evidence that's before the jury. So what is the point of asking the defendant whether he agreed to certain characterizations if only to perhaps plant in the jury's mind that you have a defendant who is not truthful? Your Honor, there was a very specific purpose, which is to point out for the jury that the issue that they needed to decide, there was a very narrow issue at trial. Defense's trial strategy, as established through his direct examination of Martin, was that Mr. Martin did not challenge that the robberies occurred, the specific items that were taken, that they traveled to interstate commerce. He did not challenge any of that, or that the robberies amounted to or involved violence. None of those elements were challenged by Mr. Martin at trial. The only element he was challenging was that he actually participated in them. And so what the prosecutors did during the first three pages out of the 91 pages of cross-examination was simply establish for the jury, these are the things you don't have to worry about because they are not contested. The thing that is contested is whether or not he was there. And that's what she spent the rest of the 88 pages of cross-examination doing, was establishing that he was, in fact, there. So there was a reason for her to do it. In addition, the manner that she asked the questions mimicked almost exactly the manner that Martin's own counsel had asked him similar questions on direct, where Mr. Martin's counsel would ask him, do you remember Mr. Bidishvili testifying? Did you rob Mr. Bidishvili? And so the prosecutor asked, do you remember Mr. Bidishvili testifying? Do you agree that he was robbed? And so Mr. Martin never challenged that the he never said his counsel never said challenged that the victims were lying, that the robberies did not occur. It was simply to establish the narrow issues that the jury needed to decide. And as this Court decided in Greer, under plain error, this Court or the Supreme Court would have had to say the specific formulation the prosecutor used was erroneous in order for this Court to find on plain error review that those questions were improper. And this Court has never done that. And, in fact, in Greer, this Court stated the only time this Court has held that the questions are erroneous is when the prosecutor specifically asks whether or not the witness was lying, which the prosecutor did not do here. She didn't even ask if the witness was inaccurate. And in addition, the answers that Mr. Martin gave show that he had leeway to answer the questions yes, answer the questions no, or to say, which he said many times, I don't know. I don't know whether that happened. I don't know what happened there. And the formulation of the questions allowed him to have that leeway, meaning he was not required to call the witnesses liars. Does the Court have any further questions? I don't think so. Thank you. No, I'm sorry. We have rebuttal. Three minutes. Your Honors, before I want to correct, I believe I cited the Greer case in response to one of the Court's questions. But the case that I was referring to is McGill. In the Greer case, the Court specifically declined to decide whether something less than a direct are you lying question would be a – would trigger an error. I think the point is you can ask whether someone's lying in many different ways. You don't have to actually use the word lie. And so the question is whether you're really asking that question. Whereas your opposing counsel says when you ask if you agree, there's a lot of – you know, you're not chained into saying that someone's actually lying in effect. You can say, I don't know, no basis to agree. There's a lot of different answers. In this case, the are you – do you agree asks specifically about who participated. It didn't necessarily refer back to specific testimony. And to that extent, I think it triggers the are you lying kind of response. I also wanted to address the issue of past recollection recorded with regard to the script. That – the past recollection recorded foundation was not laid. And even – first of all, the document was admitted long before any attempt was made to lay any foundation. The witness had not testified at all regarding his inability to recall. It did not appear he had any inability to recall. Instead, he was handed a list and said, here, you can read this for your testimony. Even if they had somehow established that the witness had a lapse of recall here or there, the document itself would not have been admissible. It would – only the defense could have offered the document itself under the evidence code. So the idea that the government could have admitted the document itself as past recollection recorded is not supported by law. Remind me whether in the closing arguments, whether either counsel referred to this exhibit. I think everybody referred to this exhibit. It was in and it had to be dealt with. And the plea agreements – the admission of the plea agreements also bolstered – was to bolster the credibility of the cooperating witnesses. And what's really critical about the admission of the plea agreements is that the plea agreements as admitted included a full recitation of the facts which the witnesses admitted. As part of those agreements, so what the danger is from that is that the jury can say, look, okay, this is the truth. This is what the witness testified to. So therefore, the witness is credible. And I think that's very damaging. And I see that my time is up. Ginsburg. All right. Thank you, counsel. U.S. v. Martins will be submitted, and the Court will be – take a brief five-minute recess before taking up the remaining two cases for today.
judges: Wardlaw, Clifton, Katzmann